Case 3:22-cv-00326   Document 16   Filed on 09/25/23 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
September 25, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| OMAR MOHAMMAD BATAINEH, | § § | |
| Plaintiff. | § § | |
| V. | § § | CIVIL ACTION NO. 3:22-cv-00326 |
| COMMISSIONER OF SOCIAL SECURITY, | § § § § | |
| Defendant. | § | |

# MEMORANDUM AND OPINION

Plaintiff Omar Mohammad Bataineh ("Bataineh") seeks judicial review of an administrative decision denying his applications for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Bataineh and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 8, 13. After reviewing the briefing, the record, and the applicable law, Bataineh's motion for summary judgment is **DENIED**, and the Commissioner's motion for summary judgment is **GRANTED**.

## BACKGROUND

Bataineh filed applications for disability insurance benefits under Title II and supplemental security income under Title XVI of the Act on August 13 and September 11, 2020, respectively, alleging disability beginning on June 29, 2020. His applications were denied and denied again upon reconsideration. Subsequently, on August 16, 2021, an Administrative Law Judge ("ALJ") held a hearing and found that Bataineh was not disabled. Bataineh requested Appeals Council review, and on October 21, 2021, the Appeals Council remanded the case to the ALJ for further review. The ALJ held a second hearing on April 19, 2022,

and again found that Bataineh was not disabled. Bataineh filed another appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Bataineh had not engaged in substantial gainful activity since June 29, 2020. *See* Dkt. 6-5 at 9.

The ALJ found at Step 2 that Bataineh suffered from "the following severe impairments: osteoarthritis of the bilateral knees, degenerative disc disease of the cervical and lumbar spine, hypertension, depression, anxiety, and opioid dependence secondary to chronic pain syndrome." *Id.* at 10.

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments. *See id* at 13.

Prior to consideration of Step 4, the ALJ determined Bataineh's RFC as follows:

> [Bataineh] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he cannot climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs. He is limited to understand, remember, and carry out simple instructions or unskilled work. He can occasionally interact with supervisors, coworkers, and the public. He cannot perform fast-paced production jobs as discussed below. He cannot work around unguarded machines or unguarded heights or perform jobs that require commercial driving.

3

*Id.* at 19.

At Step 4, the ALJ found that Bataineh is unable to perform any past relevant work. Nonetheless, the ALJ elicited testimony from a vocational expert that "there are jobs that exist in significant numbers in the national economy that [Bataineh] can perform." *Id.* at 31. Specifically, the vocational expert identified the following light and sedentary occupations:

| Occupation | DOT Code | Jobs In The National Economy |
|---|---|---|
| router (light-SVP 2) | 222.587-038 | 50,000 |
| cleaner housekeeper (light-SVP 2) | 323.687-014 | 205,000 |
| mail clerk (light-SVP 2) | 209.687-026 | 30,000 |
| document preparer/scanner (sedentary-SVP 2) | 249.587-018 | 136,000 |
| addresser (sedentary-SVP 2) | 209.587-010 | 10,000 |

Dkt. 6-5 at 32. Based on the Medical-Vocational Rules, the ALJ explained that Bataineh is not disabled. *See id.* at 31–35.

## DISCUSSION

This social security appeal raises only one issue: whether the ALJ's failure to explicitly evaluate the opinion of Dr. Kweli Amusa ("Dr. Amusa")—the medical expert who testified at the initial August 16, 2021 hearing—warrants remand. For the reasons I explain below, the ALJ erred in failing to evaluate Dr. Amusa's opinion, but this error was harmless.[1]

### A.   THE REVISED REGULATIONS

"On January 18, 2017, the Social Security Administration promulgated new regulations applicable to disability claims filed on or after March 27, 2017."

---

[1] In his briefing, Bataineh alternates between challenging the ALJ's decision both for legal error and for being unsupported by substantial evidence. *Compare* Dkt. 9 at 11 ("The ALJ's RFC determination is unsupported by substantial evidence as he failed to evaluate the opinion of medical expert Kueli Amusa, M.D."), *with id.* at 12 (arguing that the ALJ's failure "to evaluate the opinion of Dr. Amusa in accordance with the regulations and caselaw" was "error"). Legal error and substantial evidence are separate, albeit related, inquiries. *See Est. of Morris*, 207 F.3d at 745. The argument that the ALJ failed to comply with agency regulations is one of legal error. *See Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 498–501 (S.D. Miss. 2021).

*Williams v. Kijakazi*, No. 23-30035, 2023 WL 5769415, at *2 (5th Cir. Sept. 6, 2023). Because Bataineh filed for benefits after March 27, 2017, the ALJ was required to apply the new regulations. "These new regulations eliminate the old hierarchy of medical opinions, no longer provide for any inherent or presumptive weight, and do away with the examining and non-examining physician terminology." *Id.* Instead, in determining what weight, if any, to give a medical opinion, the ALJ must consider five factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's specialty; and (5) "other factors that tend to support or contradict" the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors in evaluating persuasiveness are supportability and consistency. *See id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

With respect to "supportability," "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone ex rel. Vellone v. Saul*, No. 1:20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021). "As for consistency, the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(3)). "[C]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.*

At a minimum, an ALJ's persuasiveness explanation should "enable[] the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Cooley*, 587 F. Supp. 3d at 499 (cleaned up). "Stated differently, there must be a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166, 2021 WL 3708047, at *5 (quotation omitted).

5

With these regulations in mind, I turn to the ALJ's assessment of Dr. Amusa's medical opinion.

**B.   THE ALJ ERRED IN FAILING TO EVALUATE DR. AMUSA'S OPINION**

At the August 16, 2021 hearing, Dr. Amusa testified that

> [I]t's reasonable that [Bataineh] be limited to a sedentary level. So no lifting greater than 10 pounds on occasion or less than 10 frequently. I think the standing and walking would be limited to two out of eight and sitting to six. His posturals would all be just occasional, except for no ladders, ropes, or scaffolds; no unprotected heights; no hazards in the workplace. Reaching overhead with both upper extremities would be limited to just occasional. All other reaching would be limited to frequent. [Bataineh] would avoid exposure to extreme cold or uneven terrain.

Dkt. 6-6 at 25. Notably, the ALJ did not even mention Dr. Amusa's opinion until Step 4—when he did, this is all he wrote:

> At the first hearing, Dr. Amusa limited [Bataineh] to a restricted range of sedentary work, and jobs performing this were identified. Dr. Oguejiofor limited the claimant to a restricted range of light work. I found Dr. Oguejiofor persuasive because he testified later and had more medical evidence. Moreover, he is a fellow in the College whereas Dr. Amusa is a member, indicating Dr. Oguejiofor has more experience. Nonetheless the vocational expert identified both light and sedentary jobs that [Bataineh] can perform, and even if the light jobs are eliminated, there remain a significant number of jobs in the economy at sedentary.

Dkt. 6-5 at 32. This (lack of) analysis is patently insufficient under the revised regulations, which require "[s]ource-level articulation" for each medical source. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

Yet, the Commissioner contends that "[t]he ALJ provided valid reasons for finding Dr. Amusa's opinion . . . less persuasive. Specifically, the ALJ noted that Dr. Oguejiofor testified later and had more medical evidence to consider." Dkt. 14 at 12 (cleaned up). It is true that "[t]he ALJ carefully detailed Dr. Oguejiofor's testimony in his decision." *Id.* at 7. But Bataineh's contention here is not that the ALJ failed to evaluate *Dr. Oguejiofor's* opinion—it's that "the ALJ failed to evaluate the opinion of *Dr. Amusa* in accordance with the regulations and caselaw [and that

6

t]his error is not harmless." Dkt. 9 at 16 (emphasis added). The Commissioner points me to no case law saying that the requirement to provide source-level articulation for each medical source is nullified so long as the ALJ carefully details *another* source's opinion in his decision. *See also L. v. Kijakazi*, No. 4:21-CV-02407, 2022 WL 4543200, at *3 (S.D. Tex. Sept. 28, 2022) ("When making the RFC determination, the ALJ must consider all medical opinions contained in the record."). Accordingly, I have no trouble finding that the ALJ committed legal error in failing to evaluate Dr. Amusa's opinion in accordance with the revised regulations.[2]

The only question now is whether that error was harmless. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) ("Having determined that the ALJ erred . . . , we must still determine whether this error was harmless.").

### C. THE ALJ'S ERROR WAS HARMLESS

"'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). Only if a claimant can demonstrate that his substantial rights were affected—in other words, that the error was not harmless—is remand required. *See id.* at 449. Errors are harmless where "[i]t is inconceivable that the ALJ would have reached a different conclusion." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). But where "[t]he ALJ's legal error prevents this Court from determining whether substantial evidence supported his decision . . ., remand is required." *Cooley*, 587 F. Supp. 3d at 501 (remanding because the ALJ's failure to evaluate a medical opinion in compliance with the

---

[2] There is an argument to be made that the ALJ's implicit consideration of Dr. Amusa's opinion is enough to render his decision free of legal error. That certainly seems to be the stance the Commissioner took in her brief. But the revised regulations explicitly require source-level articulation for each medical source. Where, as here, the ALJ fails to provide even a conclusory statement about the persuasiveness of a medical opinion, that simply cannot be enough. For this reason, I am constrained to find that the ALJ erred in failing to discuss Dr. Amusa's opinion.

7

revised regulations prevented the Court from making a substantial evidence determination).

Because (1) Dr. Amusa opined that Bataineh would be limited to sedentary work with occasional overhead reaching, and (2) the only two sedentary jobs the vocational expert identified "require frequent reaching" and are "considered obsolete by courts in the Fifth Circuit,"[3] Bataineh argues that remand is required so the ALJ can hear "testimony from a [vocational expert] as to what jobs [Bataineh] would be able to perform, if any." Dkt. 9 at 16. In making this argument, Bataineh conveniently assumes that the ALJ would have found Dr. Amusa's opinion credible had the ALJ evaluated Dr. Amusa's opinion in accordance with the revised regulations. The glaring problem with Bataineh's assumption is that the ALJ's decision provides undeniable evidence that the ALJ did not find Dr. Amusa's opinion convincing:

> Dr. Oguejiofor opined that [Bataineh] has the residual functional capacity to perform light work with no ropes, ladders, or scaffolds; all posturals are occasional (Hearing Testimony). The undersigned finds this opinion is persuasive because the evidence discussed thoroughly herein supports it. When asked *why he selected light work instead of sedentary as the expert [Dr. Amusa] had at the first hearing*, Dr. Oguejiofor replied that the objective record indicated the claimant can perform. This statement is conclusory, but dr. [sic] Oguejiofor is an expert. He is Board certified in internal medicine, and as a disability medical expert, he has knowledge of the disability program and regulations. The undersigned concludes that Dr. Oguejiofor's testimony at the remand hearing is more persuasive, in that he was able to consider evidence submitted after the original decision, which indicated the claimant is more appropriately limited to light work. Additionally, *the limitation to sedentary work does not adequately account for the conservative treatment and lack of documented side effects in the record*.

Dkt. 6-5 at 30 (emphasis added).

---

[3] The Commissioner does not contest that the jobs of document preparer/scanner (DOT Code 249.587-018) and addresser (DOT Code 209.587-010) require frequent reaching and should be considered obsolete.

It is apparent that the ALJ considered the difference between Dr. Amusa and Dr. Oguejiofor's opinions. In doing so, the ALJ relied heavily on the fact that Dr. Oguejiofor was more qualified than Dr. Amusa and had the benefit of "more medical evidence" than Dr. Amusa. *Id.* at 32. Even if the ALJ had explicitly articulated how persuasive he found Dr. Amusa's opinion—as he did in his first, now-vacated decision (*see* Dkt. 6-8 at 17)—nothing would have changed the different qualifications of Drs. Amusa and Oguejiofor, or the different amounts of medical evidence to which they each had access. Thus, it is inconceivable to think that the ALJ's explicit articulation of the persuasiveness of Dr. Amusa's opinion would have affected the ALJ's decision.

Nor does the ALJ's failure to explicitly articulate how persuasive he found Dr. Amusa's opinion prevent me "from determining whether substantial evidence supported his decision." *Cooley*, 587 F. Supp. 3d at 501. The medical evidence here is not so one-sided that the ALJ's decision was clearly unsupported. Moreover, I find the the ALJ's lengthy and detailed decision credible—particularly the following:

> [Bataineh's] testimony was evaluated pursuant to §§ 404.1529(c)(3), 416.929(c)(3), 404.1569a and 416.969a (SSR 16-3p) and found not to be entirely consistent regarding the severity of his symptoms and their effect on his ability to perform work related activities. ***He is able to maintain his personal hygiene and grooming, perform household chores, go out alone, play basketball, run, shop in stores, drive***, pay bills, manage [h]is [sic] finances, and follow spoken instructions. [Bataineh] lives with family and spends time with others. He has insomnia but takes medications and has not had a sleep study. ***He can lift 20 pounds*** but lacks endurance to do the remaining activities of light work. [Bataineh]'s ability to engage in the foregoing activities indicates that he is not precluded from all work-related activities. Therefore, the evidence as a whole does not indicate that [Bataineh]'s impairments, considered separately or in combination, warrant a finding of disability as he alleged. The medical records fail to support allegations of pain, limited movement, depression, and anxiety.
>
> . . . .

9

> . . . As mentioned earlier, the record reflects work activity after the alleged onset date. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that [Bataineh]'s daily activities have been somewhat greater than [he] has generally reported. It is not that the undersigned concludes that [Bataineh]'s daily activities are unlimited. ***Rather, the undersigned is not persuaded that [Bataineh]'s impairments restrict his activities beyond the limitations set forth in his residual functional capacity.***
>
> The residual functional capacity stated above reflects [Bataineh]'s limitations due to his impairments. Factors for consideration in evaluating an individual's subjective complaints of pain include whether there is documentation of persistent significant limitations of range of motion, muscle spasm, muscular atrophy from lack of use, significant neurological deficits, and no-alleviation of symptoms by medication. ***The clinical evidence of record does not show ongoing deficits that would support a greater level of restrictions.***

Dkt. 6-5 at 21 (citations omitted) (emphasis added). This analysis "is relevant and sufficient for a reasonable mind to accept as adequate to support" the ALJ's decision. *Ramirez*, 606 F. App'x at 777 (quotation omitted). Thus, the ALJ's decision is supported by substantial evidence.

## CONCLUSION

For the reasons discussed above, Bataineh's motion for summary judgment (Dkt. 8) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 13) is **GRANTED**.

SIGNED this 25 day of September 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE